UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

97 JUN -4 PM 2: 09

U.S. DISTRICT COURT
N.D. OF ALABAMA

AMERICAN NATIONAL ACCEPTANCE  )
CORPORATION, a Florida
Corporation,                  )

          Plaintiff,          )

vs.                           )    CASE NO: CV97-S-1310-NE

STEVEN R. QUINN, individually )
and doing business as
J & S AUTO SALES,             )

          Defendant.          )

ENTERED

JUN 4 - 1997

### MEMORANDUM OPINION

This action came on for hearing on plaintiff's application for
preliminary injunctive relief pursuant to an order entered May 29,
1997, establishing June 2, 1997, 9:30 a.m., and Birmingham, Alabama
as the date, time, and place for such hearing.[1]  Defendant Steven
R. Quinn was served with notice of such hearing in accordance with
Rule 4(e)(2), *Fed.R.Civ.P.*, but did not appear.  Upon consideration
of plaintiff's verified complaint and the evidence presented at
such hearing, this court proceeds to enter its findings of fact and
conclusions of law.

### I.   FINDINGS OF FACT

1.   Plaintiff, American National Acceptance Corporation
("ANAC") is a Florida Corporation with its principal place of
business in Daytona Beach, Florida.   (Plaintiff's Verified
Complaint, ¶ 1.)

---

[1]See this court's "Temporary Restraining Order and Notice of Hearing on
Motion for Preliminary Injunction," at 4.

2.    Defendant Steven R. Quinn ("Quinn") is over 19 years of age, a citizen of the State of Tennessee, and resides at 206 East Washington Street in Fayetteville, Tennessee.  (Id., ¶ 2; Carpenter Testimony.[2])

3.    The entity identified in the style of this action as "J & S Auto Sales" ("J&S") is a sole proprietorship owned by Quinn, with two places of business, both located in Madison County, Alabama, at which used automobiles are sold to the public.  (Id., ¶ 3.)

4.    Michelle Carpenter is the manager of the J&S sales lot located on Winchester Highway in New Market, Alabama.  (Carpenter Testimony.)  Ms. Carpenter's husband, Jimmy Shelton, is the manager of the J&S sales lot located on Oakwood Avenue in Huntsville, Alabama.  (Id.)

5.    On May 30, 1997, Quinn was served with the summons, complaint, and a copy of this court's "Temporary Restraining Order and Notice of Hearing on Motion for Preliminary Injunction" by leaving copies at his dwelling house, or usual place of abode, in Fayetteville, Tennessee, with his daughter Deneil Quinn, a high school graduate, and, therefore, a person of suitable age and discretion then residing therein.  (Return of Service executed by Bill Caputo and filed June 2, 1997.)[3]

---

[2]Unless otherwise specified, all citations to testimony and exhibits refer to evidence presented at the June 2, 1997 hearing.

[3]In addition to service in accordance with Rule 4(e)(2), Fed.R.Civ.P., reflected in paragraph 5 above, on May 29, 1997, Michelle Carpenter, as manager of one of the two auto sales lots of the unincorporated association and sole

6.    On September 6, 1996, ANAC and Quinn d/b/a J&S (sometimes referred to herein as "defendant") entered into a Master Dealer Retail Purchase Agreement ("Master Agreement").    (Plaintiff's Verified Complaint, ¶ 6, and Plaintiff's Exhibit 6.)

7.    Quinn and J&S enter into retail installment contracts for the sale of motor vehicles that are secured by liens on the motor vehicles purchased by the customers.   (Carpenter Testimony.)

8.    Pursuant to the Master Agreement, ANAC purchased several of those retail installment contracts from Quinn and J&S.   (Id.)

9.    Under the Master Agreement, ANAC has the "absolute and unfettered right ... to assume all servicing and collection duties" under each retail installment contract it purchases from Quinn and J&S.   (Plaintiff's Exhibit 6, at ¶ 6.8.)

10.    ANAC has purchased over 250 retail installment contracts from Quinn and J&S.   The total value of those contracts is in excess of $1,600,000, with anticipated monthly collections of approximately $69,000.   (Verified Complaint, ¶ 10.)

11.    To induce ADFAC to finance motor vehicles and to purchase retail    installment    contracts,    defendant    made    several representations to ANAC about each contract assigned to ANAC.   One such representation was that the down payment reflected on the contract    had    been    collected    in    full    by    defendant    before    the

_____

proprietorship identified herein as J&S Auto Sales, was personally served with the same documents in accordance with Rule 4(h)(1).  (Return of Service executed by Margaret C. Dawson and filed June 2, 1997.)

contract was assigned to ANAC.   (Plaintiff's Exhibit 6:   Dealer Directives attached to Master Agreement, at ¶ V.E.)

12.   Defendant misrepresented to ANAC the amount of down payment actually received on several customer contracts, and the actual cash value of the vehicles sold.   (Carpenter Testimony.)

13.   Under the Master Agreement, for each retail installment contract purchased, ANAC paid defendant a pre-determined purchase price of 51% of the outstanding balance due under each contract, including additional approved charges for insurance and other ancillary goods and services.   (Plaintiff's Exhibit 6, at ¶ 2.)

14.   After the sale of a contract, defendant continued to collect the amount owed from the customer on behalf of, and in trust for, ANAC.   Defendant is obligated under the Master Agreement to deposit those collections on a daily basis in ANAC's bank account at Union Planters Bank of Decatur, Alabama.   (Carpenter Testimony and Plaintiff's Exhibit 6, ¶ 6.3.)   Defendant also was required to transmit via facsimile a daily statement identifying payments collected from customers, and a copy of the daily deposit receipt, evidencing the deposit of those funds to ANAC's account at Union Planters Bank.   (Plaintiff's Exhibit 6, at ¶ 6.2.)

15.   Defendant failed to make daily deposits to ANAC's account, and failed to account for collection and servicing activities.   (Carpenter Testimony.)

16.   In exchange for defendant's collection efforts, ANAC paid defendant 25% of the amount collected for, and remitted to, ANAC. (Plaintiff's Exhibit 6, at ¶ 6.9.)   Those payments were made by the

12th day of the month following ANAC's receipt of the preceding month's collections from defendant.  (*Id.*)

17.   Under the Master Agreement, defendant was required to repurchase any customer account in default, as defined in that agreement.  (*Id.*, ¶ 11.)

18.   Defendant was prohibited from advancing monthly payments on customer contracts assigned to ANAC, in an attempt to avoid a default and concomitant obligation to repurchase the account from ANAC.  (*Id.*, and Plaintiff's Exhibit 6: Dealer Directives attached to Master Agreement, at ¶ III.F.)

19.   To induce ANAC to refrain from requiring defendant to repurchase contracts that were in default, defendant did not disclose the identity of customers who failed to pay their accounts in a timely manner, or whose motor vehicles had been repossessed for failure to pay.  (Carpenter Testimony.)

20.   Defendant also advanced monthly payments for delinquent customers whose contracts had been assigned to ANAC, but concealed that fact from ANAC to avoid triggering their obligation to repurchase those delinquent contracts.  (Carpenter Testimony.)

21.   Under the Master Agreement, ANAC has the right to determine whether a motor vehicle should be repossessed from a customer.   (Plaintiff's Exhibit 6, at ¶ 13.5.)   In addition, defendant is obligated to repurchase from ANAC the account of any customer whose motor vehicle was repossessed.  (*Id.*, ¶ 11.)

22. Defendant is required to account for the physical location of all motor vehicles for which ANAC authorized repossession. (Verified Complaint, ¶ 19.)

23. Defendant did not advise ANAC of the vehicles it repossessed, or the location of those vehicles, and defendant did not repurchase customer contracts on those repossessed vehicles as required under the contract. (Carpenter Testimony.)

24. On September 20, 1996, Auto Dealers FloorPlan Assistance Corporation ("ADFAC") and defendant entered into a FloorPlan Financing and Security Agreement (the "Floorplan Agreement"). (Plaintiff's Exhibit 5.) ADFAC is a wholly owned subsidiary of ANAC, with its principal place of business in Florida. (Verified Complaint, ¶ 20 n.1.)

25. Under the Master Agreement, a default under the Floorplan Agreement with ADFAC also constitutes a default under the Master Agreement with ANAC. (Plaintiff's Exhibit 6, at ¶ 16.15.)

26. Under the Floorplan Agreement, ADFAC loaned money to defendant to purchase motor vehicle inventory. ADFAC loaned an amount equal to 80% of the actual cash value of the motor vehicles purchased, as established by invoices, purchase orders, and/or bills of sale submitted to ADFAC by defendant. (Plaintiff's Exhibit 5, at VII, ¶ B.)

27. Defendant maintained two sets of purchase records: one set showing the actual price paid for vehicles; the other set showing an inflated price. (Carpenter Testimony.) Defendant

submitted the purchase records containing inflated prices to ADFAC, which then based its loan on 80% of that amount.  (*Id.*)

28.  Defendant issued a worthless check, dated April 22, 1997, to ANAC in the amount of $13,601.46.  (Carpenter Testimony and Plaintiff's Exhibit 7.)   The check was signed by Michelle Carpenter. (Plaintiff's Exhibit 7.)  The check was twice presented for payment by ANAC, and twice returned, marked "insufficient funds."   (Carpenter Testimony.)   The inference drawn from Carpenter's testimony is:  there were sufficient funds in the account when she drafted the check, but someone, apparently Quinn, withdrew funds from the account before the item was presented for payment.  (*Id.*)

29.  On May 14, 1997, ANAC declared defendant to be in default on the Master Agreement, and terminated defendant's right to service and collect on ANAC's accounts.  Thereafter, ANAC assumed all collection activities and servicing of the accounts which it had purchased from defendant.  (Verified Complaint, ¶ 29, and Exhibit D.)

30.  After ANAC declared defendant to be in default, ANAC notified those customers whose accounts had been assigned to ANAC that future payments should be made directly to ANAC, not defendant.  (McNeese and Thompson Testimony.)

31.  Employees of J&S, acting at the direction of Quinn, then telephoned at least 150 of those same customers, advising them to ignore ANAC's request, and instructing them to continue sending payments to defendant.  (Carpenter and Thompson Testimony.)

32.   J&S employees also advised some customers their motor vehicles would be repossessed if payments were not made to defendant.   (McNeese, Clemons, and Thompson Testimony.)

33.   Jimmy Shelton, the manager of the J&S sales lot located on Oakwood Avenue in Huntsville, provided a written release to one of ANAC's customers, Robert Rice, purportedly releasing him from any further liability under his contract.   (Robert Rice Testimony and Plaintiff's Exhibit 3.)

34.   Quinn has threatened ANAC with criminal prosecution if ANAC exercises its right to collect its accounts in an orderly and lawful manner.   (Verified Complaint, ¶ 33.)

35.   Quinn knew of the existing business relationships and contracts between ANAC and J&S customers, whose contracts had been assigned to ANAC.   (Carpenter Testimony.)

36.   Quinn, who did not appear, has failed to prove what, if any, threatened harm the issuance of a preliminary injunction may cause.

## II.   CONCLUSIONS OF LAW

1.   This court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a).

2.   Service of process and notice of the date, time, and place of this court's hearing on ANAC's motion for preliminary injunction was perfected in accordance with Rule 4, *Fed.R.Civ.P.*, on May 29 and 30.

3.   For preliminary injunctive relief to be warranted, plaintiff must establish: (1) a substantial likelihood of success

on the merits; (2) that irreparable injury will be suffered by
plaintiff, unless the injunction issues; (3) the threatened injury
to movant exceeds any damage the proposed injunction may cause the
opposing party; and (4) the injunction, if issued, will not
disserve the public interest. *See, e.g., Cafe 207, Inc. v. St.
Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993).

4.   ANAC has established a substantial likelihood that it
will prevail on the merits of its claims of breach of contract,
fraud, deceit, misrepresentation, suppression of material facts,
and tortious interference with contractual relations.

5.   ANAC and members of the public will suffer irreparable
injury if a preliminary injunction is not issued.

6.   ANAC has shown that it will suffer irreparable injury,
because it will be unable to make collection efforts from its
customers in a lawful and orderly manner.   Plaintiff's injuries
also  include,  but  are  not  limited  to:  the  threat  of  civil
litigation  and  criminal  prosecution;   depreciation  of  motor
vehicles;   the   uncertainty   and   adverse   effects   surrounding
defendant's repossession of several customer vehicles; and, the
potential exposure to loss caused by ANAC customers in default that
continue  to  operate  those  vehicles  without  liability  and/or
physical damage insurance.

7.   The public interest will be served if a preliminary
injunction is issued, because the Alabama residents who owe
balances  on  contracts  assigned  to  ANAC  have,  by  defendant's
actions, been placed in positions of doubt and uncertainty as to

whom their respective payments are owed.  If those customers elect to pay defendant rather than ANAC (based upon defendant's representations and threats of repossession), then such customers will suffer irreparable injury, because they may be declared in default under their contracts with ANAC, and thereby subjected to penalties, interest, attorney's fees, and possible loss of their vehicles through repossession.

8.    The threatened injury to ANAC and members of the public outweighs the threatened harm that the preliminary injunction may cause defendant.

## III.  CONCLUSION

For the foregoing reasons, plaintiff's request for preliminary injunctive relief is due to be granted.  An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this  4ᵗʰ day of June, 1997.

_____
United States District Judge